# EXHIBIT 15

# United States District Court
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| GEOTAG, INC. | § | |
| | § | |
| v. | § | Case No. 2:10-cv-572 |
| | § | |
| STARBUCKS CORPORATION., ET AL | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Godfather's Pizza, Inc.'s Motion to Sever and Transfer to the District of Nebraska (Doc. No. 381). Having fully considered the parties' arguments, the undisputed facts, and the applicable law, the Court **GRANTS** the motion. The Court **GRANTS** severance and **GRANTS** transfer of venue to the United States District Court for the District of Nebraska Omaha Division.

### I.     BACKGROUND

This litigation involves alleged patent infringement of U.S. Patent No. 5,930,474 (the '474 patent) titled "Internet Organizer for Accessing Geographically and Topically Based Information." This litigation includes a large number of related patent infringement cases. In these cases, Plaintiff accuses several hundred defendants of infringing the '474 patent by providing various locator services on their commercial websites. In general, the technology allows consumers to visit defendants' websites to obtain a map and listing of nearby locations or services.

In this particular case, Plaintiff GeoTag, Inc. (GeoTag) is incorporated under the law of Texas and has its headquarters and principal place of business within the Eastern District of Texas in Frisco, Texas. Defendant Godfather's Pizza, Inc. (GPI) is a Delaware corporation with

its headquarters within the District of Nebraska in Omaha, Nebraska. No other defendants have joined this motion.

GPI now argues that GeoTag's claims against it should be severed from this case and transferred to the District of Nebraska pursuant to 28 U.S.C. § 1404(a). GeoTag is unopposed to severance as long as the severed case, if not transferred, is treated as consolidated for pre-trial purposes with the other co-pending suits. GeoTag opposes transfer and urges that GPI cannot show that the District of Nebraska is a clearly more convenient forum.

The Court will not permit GeoTag to conditionally limit its opposition to severance. Consistent with the parties' positions, the Court finds severance appropriate.

## II.     LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A threshold inquiry is whether the suit "might have been brought" in the proposed transferee venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (*Volkswagen II*). Once a defendant satisfies that burden, the Court weighs certain factors to determine if transfer is warranted. *Volkswagen II*, 545 F.3d at 314 n.9; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08 (1947). The moving party must show good cause by demonstrating the transferee venue is clearly more convenient. *Volkswagen II*, 545 F.3d at 314. Otherwise, a plaintiff's choice of venue must be respected because that choice places the burden on the defendant to demonstrate why venue should be transferred. *Id.* at 315 n.10.

When deciding whether to transfer an action, the Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *Volkswagen II,* 545 F.3d at 315; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

The relevant factors are divided between these private and public interests. *Gilbert*, 330 U.S. at 508. "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quotation omitted). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (quotation omitted). These factors are not exhaustive, and no single factor is dispositive. *Id.*

### III. DISCUSSION

#### A. *Proper Venue*

The first question the Court must address when considering a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit could have originally been filed in the destination venue, here, the District of Nebraska. *Volkswagen II*, 545 F.3d at 312. In this case, the parties are in agreement that GeoTag's claims against GPI could have originally been brought in the proposed transferee forum. Accordingly, the Court finds the initial threshold satisfied.

#### B. *Private Interest Factors*

##### 1. <u>The Relative Ease of Access to Sources of Proof</u>

The first private interest factor is the relative ease of access to sources of proof. This factor weighs in favor of transfer when evidence could be more readily accessed from the proposed transferee district. Although documentary evidence is often stored electronically, the Court considers the physical location of the evidence. *In re Genentech, Inc.*, 566 F.3d 1338,

1345–46 (Fed. Cir. 2009). Documents relocated in anticipation of litigation are not considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d at 1345 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)); *see In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (explaining that a corporate party's relevant discoverable material is generally located at its headquarters).

GPI argues that all of the relevant evidence is located within the District of Nebraska. GPI contends that the primary sources of proof in this suit are the data, records, and source code relevant to its website. According to GPI, all of this evidence is located either at headquarters or at the offices of Midland Computer, Inc. (Midland Computer) and Midcompweb, Inc. d/b/a Web Solutions Omaha (Web Solutions Omaha). Midland Computer and Web Solutions Omaha are both headquartered in Omaha, Nebraska that are responsible for the design and maintenance of GPI's website. GPI alleges that all of the technical documents and source code pertinent to this suit are located within the District of Nebraska either at GPI's corporate headquarters or Web Solutions Omaha's headquarters. GPI concludes that all source of proof are more readily accessible from the District of Nebraska.

GeoTag maintains that it has considerable documentary evidence located at its headquarters within the Eastern District of Texas, including documents relevant to conception, reduction to practice, patent prosecution, licensing, and enforcement of the '474 patent. Under certain circumstances, credence must be given to a plaintiff's ties to the transferor venue. "[W]eight given to the location of [plaintiff's] documents is determined by whether [plaintiff] is

an 'ephemeral' entity." *NovelPoint Learning LLC v. LeapFrog Enters.. Inc.*, No. 6:10-cv-229, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010); *see In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (per curiam) (describing a plaintiff's offices within the transferor forum as "recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue"). Here, GeoTag's ties to the Eastern District of Texas are not recent or ephemeral. GeoTag and its predecessors involved in the licensing and enforcement of the '474 patent have been located in this district since 2007. GeoTag's executive management consists of Chief Executive Officer and lead inventor John W. Veenstra and President and Chief Financial Officer Lawrence P. Howorth. Both reside within the transferor venue in Plano, Texas. Furthermore, Mr. Veenstra has resided in the district since 2007. GeoTag also employs several independent contractors in connection with its business at its Frisco headquarters, where all of its documents are located. Additionally, the Court finds GeoTag's presence in Eastern District of Texas is not an artifact of prior litigation. *See In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 561–62 (Fed. Cir. 2011). The Court does not believe that GeoTag's presence in the Eastern District of Texas is in anticipation of litigation or is an effort to forum shop. Rather, GeoTag's strong connection to the Eastern District of Texas is independent of this and prior litigation.

Even though GeoTag maintains strong ties to the Eastern District of Texas, the bulk of the relevant identified evidence is more easily accessed from the District of Nebraska. *See In re Genentech, Inc.*, 556 F.3d at 1345 (explaining that an accused infringer generally maintains the bulk of the relevant evidence). On balance, this factor weighs in favor of transfer.

### 2. The Availability of Compulsory Process

The next factor is the availability of compulsory process. Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses.

Absolute subpoena power means the power to compel attendance at both depositions and trial. *Hoffman-La Roche,* 587 F.3d at 1337–38. This factor requires the Court to look at non-party witness convenience rather than convenience of the party witnesses. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). Accordingly, transfer is heavily favored when the majority of the non-party witnesses reside in the transferee forum. *See Volkswagen II*, 545 F.3d at 316; *see Volkswagen II*, 545 F.3d at 304 (describing that Rule 45 of the Federal Rules of Civil Procedure protects non-party witnesses who live or work more than 100 miles from the courthouse).

GPI argues that all of the third-party witnesses are located within the absolute subpoena power of the District of Nebraska. GPI identifies individuals from the Omaha firms who developed and maintain its website as the only third-party witnesses in this case. GPI specifically names the following individuals as having knowledge relevant to this suit: (1) Kevin Stevens as the General Manager of Midland Computer when GPI signed its contract with Midland Computer; (2) Bruce L. Clure as President of Web Solutions Omaha; (3) Jill Kennedy as Interactive Media Designer for Web Solutions Omaha; and (4) Joann Swanson as a maintenance representative of Web Solutions Omaha. But GPI does not clearly indicate if these parties are unwilling to attend trial.

GeoTag asserts that there are possibly third-party witnesses with knowledge of alleged prior art within the Northern District of Texas in the Dallas area. But the weight attributed to GeoTag's prior art witnesses is undercut by GeoTag's failure to identify particular witnesses or documents that would require compulsory process. *See Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34, at 14 (E.D. Tex. Apr. 19, 2012); *Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, No. 3:09-cv-1840, 2010 WL

972240, at *2–3 (N.D. Tex. Feb. 28, 2010) (holding that although a party need not provide affidavits identifying witnesses and outlining testimony, it must at least identify the witnesses). In the event that these prior art witnesses are required to testify at trial, the Court has the authority to compel them to attend trial. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) (stating that a "person may be commanded to attend a trial by traveling from any such place within the state where the trial is held").

Importantly, neither party identifies any non-party witnesses located within the Eastern District of Texas.

The District of Nebraska has absolute subpoena power over all of the identified third-party witnesses. The Eastern District of Texas does not have absolute subpoena power over any identified non-party witnesses. Therefore, the Court finds this factor weighs heavily in favor of transfer.

### 3. The Cost of Attendance for Willing Witnesses

One of the most important factors is the cost of attendance for witnesses. In analyzing the cost of attendance of willing witnesses, courts consider the convenience of both party and non-party witnesses. *See In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) (*Volkswagen I*) (requiring courts to "contemplate consideration of the parties and witnesses"). Nevertheless, the convenience to non-party witnesses is afforded greater weight than that of party witnesses. *NovelPoint*, 2010 WL 5068146, at *6. Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317. The greater distance

witnesses have to travel for trial, the greater their expense and the longer they will be away from home and employment. *See Volkswagen I*, 371 F.3d at 205.

As a threshold matter, the courthouse for the Omaha Division of the District of Nebraska and the courthouse for the Marshall Division of the Eastern District of Texas are greater than 100 miles apart. Thus, the Court must assess the inconvenience to witnesses of having to travel to one venue over the other.

As previously noted, GPI identifies four non-party witnesses located in Omaha that will testify regarding the functionality and value of the accused instrumentality. Travel to the Omaha courthouse within the District of Nebraska is significantly more convenient than then inconvenience imposed by travelling to Marshall. GeoTag's assertion that there are potentially non-party witnesses located in Dallas who will testify concerning prior art is afforded little weight because GeoTag fails to identify the witnesses specifically. The Court affords these general assertions less weight because of their speculative nature.

GeoTag identifies two non-party inventors who are located in Chicago, Illinois and Pleasanton, California. For the Chicago inventor, Omaha would be a considerably more convenient than Marshall. But neither forum would be clearly more convenient than the other for the California inventor. *See In re Genentech*, 566 F.3d at 1344 (explaining that witnesses that "will be required to travel a significant distance no matter where they testify" are discounted under the 100-mile rule application).

With respect to party witnesses, GPI states that nearly all of its witnesses are based out of its headquarters in Omaha. GPI specifically identifies its Vice President and Chief Financial Officer Steven Roberts to testify on financial issues and Director of IT and Training

Development Curtis D. Stalnaker to testify on technical issues. For these individuals, the District of Nebraska is a clearly more convenient forum.

GeoTag contends that the Eastern District of Texas is a more convenient venue for its party witnesses. Mr. Veenstra and Mr. Lawrence both live in Plano and work at GeoTag's headquarters in Frisco. Thus, travel to Marshall is considerably more convenient over travel to Omaha. GeoTag also identifies Elizabeth Morgan as a party witness but only states that she resides within the Eastern District of Texas. Overall, trial in the Eastern District of Texas would be more convenient over the proposed venue for GeoTag's party witnesses.

In sum, all of the identified non-party witnesses reside considerably closer to the District of Nebraska than the Eastern District of Texas. Both parties have identified party witnesses who would find their respective forums more convenient. Because the convenience to non-party witnesses is afforded greater weight than that of party witnesses, the Court finds this factor favors transfer.

### 4. All Other Practical Problems

The fourth factor serves as a catchall for concerns that may weigh for or against transfer. For example, transfer is disfavored when the issue is raised late in the case. *Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23, 2009). And judicial economy may counsel against transferring a case when it would result in overlapping issues being simultaneously adjudicated in different districts. *In re Vistaprint Ltd.*, 528 F.3d 1342, 1345 (Fed. Cir. 2010). Generally, other practical problems focus on issues of judicial economy. Particularly, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the

convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997).

This litigation involves over 100 cases against in excess of 400 defendants. Although GeoTag asserts the '474 patent in each case, none of the cases involve related defendants or overlapping products or services. GeoTag argues that having a single court familiar with the facts and legal issues would produce significant gains in judicial economy. The Court disagrees.

Although all of the cases involve infringement claims, none of them share the same accused services. GeoTag claims that common issues between defendants provide gains in efficiency. But this argument is unavailing. GeoTag has not pointed to any "common issues" that would not be present in all infringement cases (i.e. claim construction). This is not a situation where other practical problems jeopardize the easy, expeditious, and inexpensive trial of this dispute.

The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filling cases within a single district. Allowing a plaintiff to manufacture venue based on this alone would undermine the principals underpinning transfer law and the recently enacted America Invents Act. *See* Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011) (codifying new law for determining proper joinder in patent cases).

Since this case is still in its infancy, and because problems with judicial economy do not exist, this factor is neutral.

*C. Public Interest Factors*

**1. <u>The Administrative Difficulties Flowing From Court Congestion</u>**

The first public interest factor is court congestion. Generally, this factor favors a district that can bring a case to trial faster. *In re Genentech*, 566 F.3d at 1347. Of all the venue factors, this is the "most speculative." *Id.* When "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Id.*

Here, neither party addresses this factor. There is no indication that either venue suffers from issues stemming from administrative difficulties associated with court congestion. Therefore, this factor is neutral.

**2. <u>The Local Interest in Having Localized Interests Decided at Home</u>**

The next public interest factor is the local interest in adjudication of the case. Traditionally, the location of the alleged injury is an important consideration. *In re TS Tech*, 551 F.3d at 1321. When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id.* Local interest also arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community. *Hoffman-La Roche*, 587 F.3d at 1338. The local interest in the litigation is an important consideration because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206.

GPI alleges that the District of Nebraska has a strong local interest in resolving this dispute because GPI is headquartered in that district. GPI states that it employs over 55 employees at its corporate headquarters in Omaha. Furthermore, GPI began operations in 1973

and has always maintained its headquarters in Omaha. Moreover, GPI's accused functionality is provided and maintained by Midland Computer and Web Solutions Omaha, also with their principal place of business in Omaha. Thus, this suit calls into question the reputation of individuals for all three companies who work in the Omaha community. Therefore, as GPI concludes, the District of Nebraska maintains a strong local interest in the resolution of this suit.

In contrast, GeoTag maintains corporate ties within the Eastern District of Texas. Therefore this venue also has a local interest in the outcome of this case. In addition to its headquarters in the transferor forum, GeoTag employs several independent contractors in connection with its business at its headquarters. As previously discussed, GeoTag's ties to the existing venue are not recent or ephemeral and must be considered.

Since the District of Nebraska is home to GPI, Midland Computer, and Web Solution Omaha and the Eastern District of Texas is home to only GeoTag, the Court finds that this factor slightly favors transfer.

### 3. The Familiarity of the Forum With the Governing Law

Courts are also to consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. The Court notes that both the District of Nebraska and the Eastern District of Texas are equally capable of applying the law regarding patent infringement. *See In re TS Tech*, 551 F.3d at 1320. Accordingly, as the parties agree, this factor is neutral.

### 4. The Avoidance of Unnecessary Problems of Conflict of Laws

The parties acknowledge that no conflict of laws questions are expected in this case. Thus, this factor is neutral.

IV. CONCLUSION

Having fully considered all of the private and public interest factors, GPI has met its burden of showing that the District of Nebraska is "*clearly* more convenient" than the Eastern District of Texas. *Volkswagen II*, 545 F.3d at 315 (emphasis added). In balancing all of the factors, the Court finds that GPI has meet its "significant burden" under § 1404(a). *Id.* at 315 n.10. Accordingly, GPI's motion to sever and transfer (Doc. No. 381) is **GRANTED**. The Court **GRANTS** severance of GeoTag's claims against Defendant Godfather's Pizza, Inc. and **ORDERS** that these severed claims be immediately transferred to the United States District Court for the District of Nebraska Omaha Division. The 20-day waiting period established in Local Rule 83(b) is waived.

It is SO ORDERED.

SIGNED this 14th day of January, 2013.

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE